IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
MAR 31 2025
TAMMY H. DOWNS, CLERK
By: DEP CLERK

| | | |
|---|---|---|
| RICKY MANNING,<br>(SPN # 30942-510)<br>Movant, | ) | |
| vs. | ) | Civil No. 4:25-cv-__________<br>Crim No. 4:22-cr-00319-LPR-11 |
| UNITED STATES OF AMERICA,<br>Respondent. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

COMES Movant, RICKY MANNING ("Manning"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

Manning is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994). Under 28 U.S.C. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or

laws of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

## II. STATEMENT OF THE GROUNDS FOR REVIEW

A. Whether pretrial counsel's failure to: (1) Communicate with Manning and correctly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement deprived Manning of effective assistance of pretrial counsel under the Sixth Amendment of the Constitution of the United States.

B. Whether sentencing counsel's failure to: (1) Review, discuss or explain the Presentence Report ("PSR") to Manning prior to sentencing hearing; (2) File substantive objections to the PSR; (3) Argue for mitigation of punishment and object to his sentence being substantively unreasonable; and (4) File a Notice of Appeal deprived Manning of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

## III. STATEMENT OF THE CASE

### A. Procedural Background

On February 13, 2024, the United States Attorney sitting in the United States District Court for the Eastern District of Arkansas, Central Division, returned a one

(1) Count Superseding Information charging Manning. See Doc. 254.[1] Count 1s charged Manning with Conspiracy to Distribute At Least 50 Grams of Methamphetamine, in violation to 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. *Id.*

On the same day, a Change of Plea Hearing was held and Manning pleaded guilty to the single count Superseding Information, pursuant to a Written Plea Agreement. See Docs. 246-248.

On May 24, 2024, Manning was sentenced to a term of 90 months' imprisonment, 5 years' Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 270, 274.

## B. <u>Statement of the Relevant Facts</u>

### 1. <u>Offense Conduct</u>

The government and Manning, through the advise of his counsel, stipulated to the following:

> In August 2021, the DEA began investigating a large-scale drug organization that was distributing methamphetamine, fentanyl, cocaine, and marijuana in the central Arkansas area. This organization was ultimately headed by co-defendant Roderick Toney. The investigation revealed that Toney was being supplied much of his narcotics from California. Based on controlled purchases from co-conspirators of Toney, agents obtained court-authorization to intercept calls to Toney's

[1] "Doc." refers to the Docket Report in the United States District Court for the Eastern District of Arkansas, Central Division in Criminal No. 4:22-cr-00319-LPR-11, which is immediately followed by the Docket Entry Number.

cellphone for a 30-day period. Agents learned that the defendant, Ricky Manning, was an associate of Toney's who assisted him in the distribution of methamphetamine and fentanyl to customer of Toney's, who would in turn supply large amounts of narcotics to other people. Agents learned of Manning's association with Toney both from interviews with cooperating witnesses and from intercepted phone calls between Toney, Manning, and others.

For example, on July 1, 2022, at approximately 3:23 pm, Toney called Manning. The call is transcribed, in relevant part, below:

TONEY: Did you put that order in?
MANNING: That's what I was telling him, man. Man, I sure don't like talking on the line.
TONEY: Ok, well let me tell you what. I'm on my way. We can just discuss it...
MANNING: That']'s what I been trying to say. I was like shit, I rather holla at you. I got some, I got a few gone but I'm saying I'm working, Unc.
TONEY: I feel you, nephew. I feel you.
MANNING: But I'm alright. It's going to be some bands made. Ever since you deal with me, ain't you made bands?
TONEY: Well you done kept your word. Your word good.
MANNING: It ain't gone never change. Man, I promise... We'll chill and chop it up.
TONEY: Alright, I'll be there in a minute. Say less.

In this call, Manning is discussing with Toney the potential acquisition of a large amount of methamphetamine. Based upon prior intercepts between Toney and co-defendant Arnold Turner, agents knew that Turner delivered methamphetamine to Manning, who was unhappy about the quality. Manning told Toney that he "got a few gone," referring to selling some of the methamphetamine, but still plans to make several "bands," referring to several thousand dollars. And Manning indicates that he's been in a drug-selling relationship with Toney that has resulted in several thousand dollars profit.

> Later that same day, at approximately 7:08 pm, Toney received a text message from Manning that said, "Bring me a big n I'll pay." Manning followed that up a minute later with another text message that said "I got my change n my cousin change." Toney replied at approximately 7:57 pm, "Get with Booboo Lil Bro." In these messages, Manning was asking for methamphetamine and said that he had money to pay for it up front. Toney told him to contact Turner ("Boo Boo") to complete the transaction. Toney has confirmed that he distributed methamphetamine to Manning..
>
> Throughout the conspiracy, the amount of methamphetamine attributable to the defendant's role is more than 350 grams, but less than 500 grams.

See Doc. 247 at 5-7.

2. Plea Proceeding

On February 13, 2024, a Change of Plea Hearing was held before Judge Lee P. Rudofsky. See Doc. 246. Manning pleaded guilty to Count 1s of the Superseding Information pursuant to a Written Plea Agreement. See Docs. 247-248. In exchange of his guilty plea, the government agreed to dismiss the remaining counts on the Indictment and recommended a 3-level reduction for acceptance of responsibility. *Id.*

3. Sentencing Proceeding

On May 24, 2024, a Sentencing Hearing was held before Judge Lee P. Rudofsky. See Doc. 270. The Court sentenced Manning to 90 months' imprisonment. See Doc. 274. It is followed by 5 years of supervised release. *Id.* The Court also ordered payment of a Mandatory Special Assessment Fee of $100. *Id.* No direct

appeal was filed in this case.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Deltoro-Aguilera v. United States*, 625 F.3d 434 (8th Cir. 2010). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief."*Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Franco v. United States*, 762 F.3d 761 (8th Cir. 2014). "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376 (2012); *Premo v. Moore*, 131 S.Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S.Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual

settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

## V. <u>DISCUSSION</u>

As a preliminary matter, Manning respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (*Pro se* pleadings are to be held to less stringent

standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### A. Counsel's Failure To: (1) Communicate with Manning and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Manning of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.

#### 1. Communicate with Manning and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial

Chapter 1, Rule 1.4: Communication of the Arkansas Rules of Professional Conduct states that:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Omar F. Greene II ("Greene") was Manning's retained counsel from pretrial through sentencing. From the outset, Greene failed to establish reasonable communication with Manning, denying him the ability to effectively participate in his defense. Greene's actions fell below the standard of professional conduct required by *Strickland v. Washington*, 466 U.S. 668 (1984), and applicable norms, depriving Manning of his Sixth Amendment right to effective assistance of counsel.

Effective representation includes the duty to consult with the client regarding important decisions and explain the strategy and potential outcomes of the case. See *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010). There may have been occasions when Greene met with Manning; however,

the quality of legal advice provided during those meetings was highly questionable. Manning informed Greene that Toney had entrapped him by recording their phone conversation in an effort to reduce his own sentence. In the presented recording, Toney insinuated that the term "BIG" referred to the quantity of drugs Manning was purchasing, whereas in reality, the conversation pertained to the street name for cocaine, "BIG." Rather than formulating a strategic defense, Greene actively collaborated with the prosecution and coerced Manning into accepting a plea deal without fully explaining its advantages or exploring potential defenses. Such actions raise serious concerns under *Lafler v. Cooper*, 566 U.S. 156 (2012), which holds that deficient legal advice during plea negotiations can amount to ineffective assistance of counsel. Additionally, the circumstances suggest a possible entrapment defense, as recognized in *Jacobson v. United States*, 503 U.S. 540 (1992), where the Supreme Court emphasized that government agents cannot induce a crime that the defendant was not predisposed to commit. Furthermore, failing to advocate for Manning's interests may violate the standard set in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires counsel to provide effective representation by making reasonable strategic decisions in defense of their client.

Moreover, by excluding Manning from his own defense, Greene failed to consider the defendant's input—an essential element in formulating a supposed trial

strategy. This lack of preparation further demonstrates Greene's failure to provide the minimum level of professional assistance required by the Sixth Amendment. See *Strickland*, 466 U.S. at 691.

In sum, Greene's deficient performance undermined the fairness of the proceedings and resulted in a manifest injustice. Had Manning received constitutionally effective assistance, there is a reasonable probability that he would have chosen to negotiate a favorable plea agreement. Accordingly, Manning's conviction and sentence should be vacated, and he should be afforded the opportunity to renegotiate a plea with effective representation.

2. Failure to Conduct An Adequate and Independent Pretrial Investigation

Defense counsel has a constitutional duty to conduct a "reasonably substantial, independent investigation" into both the facts of the case and applicable law to provide effective assistance. See *White v. Roper*, 416 F.3d 728 (8th Cir. 2005). This duty is well established by the Supreme Court in *Strickland v. Washington*, which states:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that

> makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

In this case, Greene failed to conduct a reasonable and independent pretrial investigation, as required by constitutional standards. Counsel did not thoroughly research relevant case law, investigate key facts, or explore potential defenses. Specifically:

a. Failure to Investigate Drug Quantities

Greene failed to challenge the government's assertions regarding the drug quantities attributed to Manning, despite Manning explicitly informing him that his call to Turner was solely to complain about the poor quality of the methamphetamine initially provided to him alongside the cocaine. Manning explained to Greene that this complaint ultimately led to his decision to purchase a larger quantity of "BIG" (street name for cocaine) and settled his outstanding debt with Toney for the methamphetamine. However, rather than scrutinizing the prosecution's claims or contesting the accuracy of the alleged drug amounts, Greene failed to investigate whether Manning's statements had been misinterpreted or taken out of context.

This omission raises significant concerns regarding ineffective assistance of

counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes that defense attorneys must provide competent representation, including challenging the prosecution's evidence when necessary. Furthermore, by neglecting to contest the government's calculations of drug weight—a factor that directly impacts sentencing—Greene disregarded principles established in *United States v. Apprendi*, 530 U.S. 466 (2000), where the Supreme Court held that any fact that increases the penalty for a crime must be proved beyond a reasonable doubt. The failure to properly challenge these allegations may have resulted in an inflated sentencing exposure for Manning, violating his due process rights.

Additionally, Greene's failure to contest the potential misinterpretation of Manning's conversation with Turner undermines Manning's ability to present an entrapment defense, as discussed in *Jacobson v. United States*, 503 U.S. 540 (1992). More so, if Toney, acting as a government informant, misled Manning into a transaction that he was not initially predisposed to engage in, then Greene had a duty to explore and raise entrapment as a viable defense strategy. By abdicating this responsibility, Greene not only compromised Manning's defense but also facilitated the prosecution's narrative without subjecting it to rigorous legal scrutiny. A reasonable investigation would have sought to verify or dispute these quantities, which were crucial in determining Manning's sentencing exposure under the United

States Sentencing Guidelines. *Holder v. United States*, 721 F.3d 979 (8th Cir. 2013) (holding that failure to investigate facts affecting sentencing is prejudicial).

b. Failure to Challenge Toney's Statement

To reiterate, Greene failed to challenge Toney's claim that Manning's use of the term "BIG" referred to a large quantity of methamphetamine (4 ½ ounces) rather than its actual meaning—"BIG," a common street name for cocaine. Despite Manning's clarification, Greene, along with Toney and the prosecution, insisted that "BIG" was a reference to the amount of methamphetamine rather than a slang term for cocaine.

This is because Toney had a clear incentive to misrepresent the conversation, as he sought to reduce his own sentence by cooperating with the government and implicating Manning. Greene's failure to contest this mischaracterization of the recorded conversation undermined Manning's defense and allowed the prosecution's narrative to go unchallenged.

This lapse raises serious concerns regarding ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), which requires attorneys to provide effective advocacy, including the duty to challenge unreliable witness testimony. Additionally, Greene's failure to cross-examine Toney's motivations and credibility violates the principles outlined in *Giglio v. United States*, 405 U.S. 150

(1972), where the Supreme Court held that the prosecution must disclose agreements or incentives given to key witnesses, as such deals impact their credibility. By not investigating or challenging Toney's possible self-serving motivations, Greene deprived Manning of a fair opportunity to present a proper defense.

Furthermore, the government's reliance on potentially misleading testimony without proper scrutiny may also violate *Napue v. Illinois*, 360 U.S. 264 (1959), which prohibits convictions based on false or misleading testimony when the prosecution is aware—or should be aware—of its unreliability. Greene's inaction not only failed Manning but also allowed the prosecution to strengthen its case based on questionable testimony, ultimately impacting the fairness of the trial proceedings.

c. Failure to Seek Independent Investigative Resources

Greene failed to file a motion requesting funds for a private investigator, as permitted under 18 U.S.C. § 3006A(e). The Eighth Circuit has emphasized the necessity of utilizing such resources when needed to challenge the government's case. See *United States v. Suttles*, 850 F.3d 314 (8th Cir. 2017) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Instead, Greene limited his investigation to reviewing the government's case file and engaging in discussions with the prosecutor, without

conducting any independent inquiries to corroborate or challenge the government's evidence.

d. Prejudice to Manning

Counsel's failure to conduct a meaningful investigation prejudiced Manning by depriving him of a viable defense and leaving the government's case uncontested. As the Supreme Court has made clear, "counsel's failure to investigate a potential defense strategy constitutes deficient performance where that failure is not based on reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. at 534.

e. Had Greene conducted a thorough investigation

Evidence could have been uncovered to challenge the drug quantities attributed to Manning, potentially reducing his sentencing exposure under the Guidelines. Investigating false statements, which significantly enhanced his sentence. Independent evidence might have disproven the allegation that Manning has been meeting Toney for drug-related activities all the time when he only met him once, further weakening the government's case. These failures resulted in Manning being unprepared to challenge the prosecution effectively, leaving him with no meaningful choice but to plead guilty under misinformed circumstances. The Supreme Court and Eighth Circuit both recognize that prejudice arises when counsel's failures undermine the reliability of the outcome. See *Strickland*, 466 U.S. at 694; *United States v.*

*McGill*, 11 F.3d 223 (8th Cir. 1993).

In light of the above, Greene's failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Manning of the ability to make informed decisions about his defense and undermined the fairness of the proceedings. Therefore, Manning's conviction and sentence should be vacated, and he should be granted relief to ensure his constitutional rights are preserved.

3. <u>Failure to Attempt to Negotiate a Favorable Plea Agreement</u>

Effective assistance of counsel during plea negotiations is a cornerstone of the Sixth Amendment. The Supreme Court has emphasized that a defendant must be adequately informed of "the relevant circumstances and the likely consequences" of pleading guilty versus proceeding to trial in order to make an intelligent decision. See *Lee v. United States*, 582 U.S. ___ (2017); *Brady v. United States*, 397 U.S. 742, 748 (1970). Counsel's role includes providing accurate information about potential sentencing exposure, plea offers, and the strengths and weaknesses of the case.

Where a defendant pleads guilty or rejects a plea deal based on misadvice or inadequate representation, this constitutes deficient performance under *Strickland*, if the failure falls below an objective standard of reasonableness. Here, Greene urged

Manning to plead guilty, informing him that his potential sentence would be limited to 60 months, provided that he cooperated under a 5K1.1 motion—which he ultimately did. However, this ultimately led to a 90-month sentence due to a sentencing enhancement based on the purity of the methamphetamine. Furthermore, the defendant must demonstrate prejudice by showing a reasonable probability that, but for counsel's errors, they would have chosen to proceed differently. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper,* 566 U.S. 156 (2012), the Court extended the right to effective assistance of counsel to plea-bargaining, making clear that: (1) Counsel must communicate all plea offers to the defendant; and (2) Counsel must provide competent advice on the benefits and risks of accepting or rejecting such offers.

Deficient advice during plea negotiations can violate the Sixth Amendment if the defendant is prejudiced by the resulting decision.

a. Deficient Performance by Greene

In Manning's case, counsel Greene failed to meet these constitutional standards during plea negotiations, leading to significant prejudice. Greene's errors included:

(1) Coaching and Lack of Trial Preparation: Greene discouraged Manning from considering a trial and instead coached him to accept the plea without fully

explaining the risks and benefits of each option. The Supreme Court has recognized that such conduct violates the defendant's right to make an informed decision. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

(2) Prejudice to Manning

Manning suffered prejudice as a result of Greene's deficient performance. But for counsel's errors: Manning Would Have Proceeded to Trial: (a) Had Greene correctly advised Manning of the sentencing range and potential enhancements, there is a reasonable probability that Manning would have rejected the plea offer and proceeded to trial. See *Hill v. Lockhart*, 474 U.S. at 59 (prejudice exists if the defendant would have opted for trial but for counsel's misadvice); and (b) Manning could have negotiated a better outcome. This failure deprived Manning of an opportunity to mitigate the severe consequences of the plea. See *Frye*, 566 U.S. at 147 (failure to communicate and negotiate plea offers constitutes prejudice); (c) The Plea Was Not Knowing and Voluntary: Counsel's misrepresentations and omissions invalidated the knowing and voluntary nature of Manning's plea. A plea based on incorrect advice about the consequences is inherently defective. See *Lee*, 582 U.S. ___; *Brady*, 397 U.S. at 755.

Accordingly, Greene's deficient performance during plea negotiations violated Manning's Sixth Amendment rights. His failure to provide accurate advice, negotiate

effectively, and explore all available options prejudiced Manning, resulting in a significantly harsher sentence than he reasonably anticipated. Under *Strickland* and its progeny, Manning has demonstrated both deficient performance and prejudice.

**B. Sentencing Counsel's Failure To: (1) Correctly Discuss and Explain the PSR with Manning Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable; and (4) File a Notice of Appeal Deprived Manning of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

Counsel's duties at sentencing include ensuring that the defendant fully understands the contents and implications of the PSR, raising substantive objections to incorrect or unsupported enhancements, and advocating for mitigation to secure a fair and just sentence. See *Strickland*, 466 U.S. at 688. Sentencing counsel's failure to fulfill these obligations renders their performance deficient and prejudicial, violating the defendant's Sixth Amendment rights.

1. Failure to Review and Explain the PSR

Manning's sentencing counsel, Greene, failed to review or explain the PSR's findings with Manning, leaving him unable to understand the sentencing calculations or challenge its inaccuracies. This failure deprived Manning of his right to make informed decisions and undermined his ability to meaningfully participate in his

defense. The Eighth Circuit has consistently held that effective representation requires counsel to review the PSR with the defendant and explain its potential impact. See *United States v. Herring*, 568 F.3d 1062 (8th Cir. 2009) (failure to explain PSR prejudices the defendant by denying an opportunity to address inaccuracies).

2. Failure to File Substantive Objections to the PSR

Greene's failure to properly challenge critical PSR findings resulted in unjust sentencing enhancements that significantly increased Manning's sentence.

a. Drug Quantity Calculation

The PSR attributed more than 350 grams, but less than 500 grams of actual methamphetamine to Manning, leading to an enhanced Base Offense Level. However, there was no evidence proving Manning's accountability for this quantity beyond a reasonable doubt. Under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), any fact that increases the penalty for a crime must be proven beyond a reasonable doubt. The Supreme Court extended this principle in *Alleyne v. United States*, 570 U.S. 99, 103 (2013), requiring that mandatory minimum-triggering facts also be submitted to the jury. Greene's failure to object to the PSR's unsubstantiated drug quantity finding constituted deficient performance.

Properly calculated, Manning's drug amount should have aligned with his indictment to Count 1s, corresponding to a Base Offense Level of 24 under U.S.S.G.

§ 2D1.1(c)(8), covering "At least 50 G but less than 200 G of Methamphetamine."

b. Methamphetamine Drug Purity Is Not a Proxy for Culpability

The United States Sentencing Guidelines apply a harsher penalty for defendants involved with actual methamphetamine (high-purity) than those handling a mixture, based on the assumption that purity reflects a defendant's role in the drug operation. However, this assumption is outdated and no longer applicable to modern methamphetamine trafficking.

Numerous courts have recognized that methamphetamine purity does not reliably indicate a defendant's culpability. For instance, in *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018), the court found that high purity is no longer indicative of a defendant's proximity to the source of the drug, as nearly all methamphetamine distributed today is highly pure. This court should consider similar reasoning and follow its precedent in *United States v. Diaz*, 637 F.3d 592,603 (5th Cir. 2011), where it recognized that sentencing courts have discretion to vary from the Guidelines based on policy disagreements.

In this case, Manning's alleged methamphetamine had a higher purity than the drugs typically involved in this conspiracy. The abrupt increase in the offense level based on this purity underscores the significance of drug purity under the U.S.

Sentencing Guidelines. Higher-purity methamphetamine is perceived as more dangerous and impactful, leading to harsher sentencing outcomes. This scenario illustrates how external factors, such as drug purity adjustments, can rapidly and substantially affect sentencing, particularly in cases involving methamphetamine. The courts have rejected the notion that high purity should automatically equate to a higher sentence in cases involving low-level offenders, as in *United States v. Ibarra-Sandoval*, 265 F. Supp.3d 1249 (D.N.M. 2017).

At sentencing, the Court imposed a 90-month term of imprisonment on Manning. However, considering the statutory framework, Manning should instead be sentenced to the mandatory minimum term of 60 months' imprisonment for methamphetamine under 21 U.S.C. § 841(b). This Court should further consider that Manning's involvement was part of a conspiracy, which necessitates a clear determination of the specific drug quantity and purity attributable to him for proper sentencing. Without accurately establishing these factors, the imposed sentence risks exceeding what is appropriate under the law.

c. Additional 1-level Reduction for Acceptance of Responsibility

In this case, Manning received only a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). However, Greene failed to argue that

Manning was entitled to the additional 1-level reduction under U.S.S.G. § 3E1.1(b). The third level of reduction is available when the defendant timely notifies the government of their intent to plead guilty, allowing the prosecution and court to avoid unnecessary preparation for trial. This omission by Greene resulted in a higher offense level and, consequently, a longer sentence than Manning might have otherwise received. In *United States v. Villareal-Amarillas*, 562 F.3d 892 (8th Cir. 2009), the court found that failing to argue for the full 3-level acceptance reduction could constitute ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). If a defense attorney's failure to request a guideline reduction results in an increased sentence, it may amount to a prejudicial legal error requiring resentencing.

Greene's failure to secure the additional 1-level reduction directly impacted Manning's sentencing outcome. The three-level reduction, rather than just two, would have resulted in a lower total offense level, potentially reducing Manning's sentence by several months or even years, depending on the guideline range applied. By neglecting to raise this issue, Greene provided ineffective assistance, violating the standard set in *Strickland v. Washington* (466 U.S. 668), which requires attorneys to provide competent advocacy, particularly during sentencing.

3. Failure to Advocate for Mitigation and Object to Substantive Unreasonableness

Greene failed to argue for mitigation or contest Manning's sentence as substantively unreasonable. The Supreme Court has held that sentencing counsel must advocate for mitigating factors to reduce a defendant's sentence. See *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Factors such as the additional 1-level reduction for acceptance of responsibility and correct amount of drugs could have supported a lower sentence.

Additionally, the 90-month sentence imposed was substantively unreasonable given Manning's limited role and the errors in the PSR calculations. In *United States v. Garza*, the Fifth Circuit emphasized the improper application of sentencing enhancements, particularly when they disproportionately impact defendants. The court reversed and remanded a case where an enhancement for firearm possession was improperly applied, reinforcing the need for accurate sentencing determinations.

In his letter to Judge Rudofsky, Manning conveyed his belief that he did not receive adequate guidance and support from his counsel, which resulted in a longer sentence. See Exhibit 1. He addressed the concerns outlined in this motion and respectfully urged the Court to consider his family's struggles in the pursuit of justice on his behalf.

4. <u>Failure to File a Notice of Appeal</u>

In this case, Greene failed to file an appeal on his behalf, potentially missing

a critical opportunity to challenge aspects of his sentencing or the legal proceedings.

However, in *United States v. Garcia*, 667 F.3d 1218 (5th Cir. 2012), the Fifth Circuit held that a plea agreement's appellate waiver does not automatically bar all appeals, particularly where ineffective assistance of counsel or prosecutorial misconduct is alleged. Similarly, in *United States v. White*, 307 F.3d 336 (5th Cir. 2002), the court emphasized that appellate waivers must be knowingly and voluntarily made, and any ambiguity in the waiver should be construed in favor of the defendant.

Had Greene properly informed Manning of these legal nuances, Manning could have explored potential appellate grounds, such as Greene's own failure to challenge sentencing enhancements or raise mitigating factors. By misrepresenting the scope of the appeal waiver in the Plea Agreement, Greene effectively deprived Manning of his right to seek further judicial review.

A lawyer performs deficiently if he "disregards specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer also performs deficiently if he fails to discuss the advantages and disadvantages of an appeal and fails to ascertain the defendant's wishes about an appeal whenever "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to

counsel that he was interested in appealing." *Id.* at 478-80.

To demonstrate ineffective assistance of counsel based on a claim that counsel failed to file a notice of appeal, Manning must show Greene performed deficiently and that a reasonable probability exists that, but for counsel's deficient conduct, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 476-77, 484, 486. Manning need not demonstrate that he would have been able to raise a meritorious issue on appeal. *Id.* at 483-86. Manning need only show "that there is a reasonable probability that, but for [Greene's] failure, he would have timely appealed." *Id.*

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, the Court must also consider whether counsel "fully inform[ed] the defendant as to his appellate rights." To meet his constitutional duty, Greene had to do more than simply give Manning notice "that an appeal is available or advise that an appeal may be unavailing." *Id.* Instead, he must have advised Manning "not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *Id.* Failure to provide such advice constitutes constitutionally deficient performance. *Id.*

When considering prejudice in a case involving counsel's failure to file a Notice of Appeal, the Court does not require the defendant to show that his appeal

would have had merit. *Vinyard,* 804 F.3d at 1228 (citing *Flores-Ortega*, 528 U.S. at 486)). The reason that Manning need not make this showing follows the reasoning in *Strickland* that when counsel's acts render a court proceeding unreliable or nonexistent, the Court presumes prejudice with no further showing from the defendant of the merits of his claims. *Flores-Ortega*, 528 U.S. at 484. Thus, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* As such, "the defendant must only demonstrate that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Id.* The Court's focus therefore should be on whether Manning can demonstrate that, but for Greene's deficient performance, i.e., his failure to file a Notice of Appeal, he would have appealed the District Court's Judgment in a Criminal Case [Doc. 274] in a timely manner. *Flores-Ortega*, 528 U.S. at 484.

As the record fails to conclusively establish that Manning did not instruct Greene to file a notice of appeal, this Court may grant Manning relief in the form of an out of time appeal in the first instance. In the alternative, the Court should hold an evidentiary hearing to expand an incomplete record and resolve this matter.

## VI. CONCLUSION

In light of the foregoing, it is evident that Manning was deprived of his constitutional right to effective assistance of counsel at both the trial and sentencing phases of his case. Counsel's failure to adequately inform Manning of the implications of his plea, properly object to inaccuracies in the PSR, and advocate for a fair and just sentence constitute deficient performance under the standards established by *Strickland*, and its progeny. These errors prejudiced Manning, resulting in a significantly harsher sentence than he otherwise would have received had counsel performed competently.

The U. S. Supreme Court has consistently held that a defendant is entitled to effective legal representation at every critical stage of a criminal proceeding, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Here, the failures of Manning's counsel not only undermined the fairness of the proceedings but also led to a fundamentally unjust outcome.

Had Manning been properly informed, represented, and advocated for, there is a reasonable probability that he would have received a substantially lower sentence at sentencing. These failures deprived him of his rights under the Sixth Amendment, warranting the vacatur of his conviction and sentence.

For these reasons, Manning respectfully requests that the Court grant his § 2255 motion, vacate his conviction and sentence, and order appropriate relief, including but not limited to resentencing or an evidentiary hearing to fully assess counsel's deficiencies, resolve facts in dispute between the parties and their prejudicial impact on his case, and to expand an incomplete record.

Respectfully submitted,

Dated: March 20 2025

Ricky Manning

RICKY MANNING
REG. NO. 30942-510
FCI BEAUMONT MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 26040
BEAUMONT, TX 77720
Appearing *Pro Se*

**<u>EXHIBIT 1:</u>**
**"Letter in Support of § 2255 Motion"**

Dear: Judge LEE P. Rudofsky

MR. Rudofsky my name is Ricky Manning
Im currently serving time on a Conspiracy
charge that I plead guilty to on 6/3/24
My Reason for writing you is because I was
Miss repersented in court my Counsel did not
assist me at all on my case which I paid
him to do he basically instructed me to
take whatever plea deal the prosecutor
offered not informing me that Methamphetamine
and Cocaine where to different Sentencing
guledzines MR. Rudofsky Im taking full Responsibility
For my Role in the Conspiracy Im not Saying I
did not have dealings with my Co-defendent
MR. Toney all Im saying is that on the
phone Recording that got me hear is I was not
calling to purchase Methamphetamine I was
asking to buy Cocaine the term I used was
Im trying to get a (BIG) everyone knows
that a (BIG) is 4 1/2 ounces of Cocaine
my Co-defendent MR. Toney told the Prosecutor
a BIG was referred to as a pound of
Methamphetamine which is a lie he was Saying

whatever to save himself and the sad part about this is I told my Counsel MR. GREENE several times that I was not talking about Methamphetamine I was trying to buy Cocaine and his exact words was the prosecutor does not care it it was Cocaine or Methamphetamine I was caught Red handed and I should take the plea deal or it's only gone to get worse for me so of course I took it because I thought my lawyer had my best Intrence in mind which come to find out since I've been doing time that if my lawyer would have done his job just a little I could have been sentenced under the Cocaine guid lines once again I admitt to my wrong doings I just want to be sentenced correctly for the crime I commited not what my co-defendent is accusing me of he's lying to Recieve a lesser sentence Im sure you are aware of how it works Just please ask anyone who could assist you with te correct term on the streets For a (BIG) Please!!! Im not a bad person Ive made mistakes like everyone eles and I own up to mines. I just want to be treated Fairly for my involvment in this Conspiracy

MR. Rudofsky my family has Struggled to put the money together to file this motion hoping I can recieve Justice for the miss leading of my lawyer MR. GREENE I was even supposed to get a 3-point deduction For me accepting Responsibility which I only got 2-points because my lawyer never question it in court he never put up a fight for me period he basically went along with whatever the prosuctore said If you can find it in your heart to review this matter for me I would be very much greatful please and THANK YOU: Respectfully

P.S I've been locked up for 2 1/2 years on this charge but I've truely learned my lesson and want to do better for myself as a man upon my ~~Realese~~ Release my Fathers supervision is waiting for me to come home and is going to give me a Job upon my Release so I can get my life on the Right track they do Construction work and it's something Im looking foward to make a career of and in my heart that is a better opertnity than being in Prison PLease Help and THANK You
Respectfully.

I Ricky Manning also wanted to add another key factor that further proves I had No help from my Counsel I never got my motion of discovery from MR. GREENE He honestly gave me No help with my case just basically came to me with a plea Offer from the prosecutor and advised me to take it or it was only going to get worser for me and I believed him but I Swear on my Grandmothers grave the Conversation on the phone was Cocaine Talk!!! I truely hope you find it in your heart to look at this matter please and Thank you these are also some of the classes I've took Since I've been here the past 8 months Im honestly trying to do better for myself and my family

Respectfully
Thank you

BMME2 * INMATE EDUCATION DATA * 03-20-2025
PAGE 001 OF 001 * TRANSCRIPT * 12:12:01

REGISTER NO: 30942-510 NAME..: MANNING FUNC: PRT
FORMAT.....: TRANSCRIPT RSP OF: BMM-BEAUMONT MED FCI

--------------------------- EDUCATION INFORMATION ---------------------------

| FACL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|---|---|---|---|---|
| BMM | ESL HAS | ENGLISH PROFICIENT | 08-11-2024 0859 | CURRENT |
| BMM | GED EN | ENROLL GED NON-PROMOTABLE | 08-11-2024 0859 | CURRENT |

----------------------------- EDUCATION COURSES -----------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| BMM | ACE REAL ESTATE CLASS | 11-01-2024 | 01-03-2025 | P | C | P | 16 |
| BMM | ACE STARTING A SMALL BUS CLASS | 11-01-2024 | 01-03-2025 | P | C | P | 16 |

G0000 TRANSACTION SUCCESSFULLY COMPLETED